[Civ. No. 2769. Fourth Dist.—July 9, 1941.]

TAPO CITRUS ASSOCIATION (a Non-profit Co-operative Association), Appellant, v. R. E. CASEY, Respondent.

Stewart, Shaw & Murphey, Wm. L. Murphey and Arvin B. Shaw, Jr., for Appellant.

Don R. Holt for Respondent.

MUNDO, J., *pro tem.*—Plaintiff is a non-profit co-operative marketing association organized in 1917 under the provisions of Title XXI, Part 4, Division First of the Civil Code of the State of California, and is engaged in picking, packing, shipping and marketing oranges, lemons and other citrus fruits produced upon lands owned or controlled by its members situate in the vicinity of Rancho Tapo, in the county of Ventura. On March 1st, 1937, defendant became a member of said association and executed a contract in writing to deliver to the association all citrus fruits grown upon land owned by defendant so long as he remained a member of plaintiff association. The contract further provided that defendant would be bound by the articles, regulations and by-laws of plaintiff association. At the time defendant became a member of the association and at all times thereafter, the articles of incorporation of plaintiff association provided in article "sixth" that the voting power and property rights and interests of each member of the association should be unequal; that the voting power of each member should be determined as follows: "Each member shall have one vote at all annual and special meetings of the members for each $10.00, or major fraction thereof, paid by him to the revolv-

ing fund, . . . less all payments made to him from said revolving fund." Article II, section 9 of the by-laws of said association at the time defendant became a member thereof and at all times thereafter, provided that at each meeting of the members each member shall be entitled to vote in person or by proxy held by some member or members present at such meeting and made in accordance with the laws of the State of California, and shall have one vote for each $10.00 or major fraction thereof paid by him to the revolving fund; that all questions except the election of directors and any questions, the manner of deciding which is specially regulated by law, shall be determined by a majority of the members; provided, that any member may demand a representative vote and in that case such representative vote shall immediately be taken and each member shall be entitled to one vote for each $10.00 or major portion thereof paid by him to the revolving fund. At all times after July 21, 1931, article I, section 10 of the by-laws of plaintiff association provided that if any member thereof should cease, fail, neglect or refuse for any reason to deliver, pack, ship or market any portion of his citrus fruits produced from orchards owned or controlled by him, through plaintiff association, or should sell any of his said citrus fruits, the association shall be entitled to collect from such member three-fourths of one cent per pound for all oranges so sold. At all times from July 21, 1931, until January 4, 1938, article I, section 8 of the by-laws of plaintiff association provided that its members could withdraw by filing a written notice with the secretary of plaintiff association stating his withdrawal during the month of October of any year. On January 4, 1938, at the regular annual meeting of the members of plaintiff association, in lieu of an oral resolution and voice vote to amend article I, section 8, members holding a majority of the voting rights, 2419 votes out of a total of 3350 votes according to the next preceding priority schedule of funds paid in by the members to the revolving fund, executed a written assent, by the terms of which said article I, section 8 of the by-laws of said association was amended to provide that any member might withdraw from the association only during the first week in September of any year. The members who executed said written assent were less than a majority in number of the members of said association. On February 19, 1938, a written notice of said

assent of the members to amend said by-laws of said plaintiff association was mailed to each and all of the members of said association including the defendant as the address of each member appeared upon the books of plaintiff association. In said notice specific attention was directed to defendant and each and all of the other members of the plaintiff association that on January 4, 1938, said by-laws had been amended as to the date of permissible withdrawal of any member from "the month of October" as theretofore provided, to "the first week of September" of each year.

On October 29, 1938, after the adoption of said amendment of said by-laws and notice thereof given to the defendant, defendant notified plaintiff association in writing of his withdrawal from the plaintiff association. On the same day plaintiff association notified defendant in writing acknowledging defendant's notice of withdrawal, directing defendant's attention to the change in the by-laws as to the time within which withdrawals would be permitted, directing defendant's attention to notice of change in the association's by-laws dated February 19, 1938, and notifying defendant that his notice of withdrawal had been presented too late, was invalid and ineffective, and was not accepted by the plaintiff association.

Thereafter defendant entered into an agreement with the Ventura County Orange and Lemon Association, a co-operative marketing association, by the terms of which defendant agreed to harvest and deliver all oranges grown by defendant to said last-mentioned association. On April 20, 1939, plaintiff association notified defendant that it expected defendant's crop to be harvested and delivered to it on or about April 24, 1939. At all times thereafter defendant neglected, failed and refused to harvest or deliver to plaintiff association or permit plaintiff association to harvest and receive delivery of and market oranges grown by defendant on his land, estimated to consist of 2,300 field boxes of oranges.

The plaintiff association commenced this action to enjoin defendant from delivering fruits grown by him to the Ventura County Orange and Lemon Association, to require defendant to specifically perform all of the terms of the grower's contract entered into by defendant and plaintiff association, for a temporary restraining order, costs and such other relief

as the court may deem just. On July 17, 1939, a hearing was had and judgment was entered for the defendant upon the ground that the amendment to the by-laws of plaintiff association had not been duly or regularly adopted. The plaintiff association appeals from this judgment.

The liability of defendant for breach of contract to deliver his citrus crop to plaintiff association, either by mandatory or prohibitory injunction or both, for penalties prescribed in the by-laws of plaintiff association in the event defendant sells his citrus fruit elsewhere than to plaintiff association, and any liability of plaintiff association for costs of court, depends upon the validity of defendant's withdrawal as a member of plaintiff association on October 29, 1938, which in turn is dependent upon the validity of the adoption on January 4, 1938, of the amendment of article I, section 8, of said by-laws changing the time of permissive withdrawal of members from "the month of October" to "the first week in September" of each year.

When either the general law or the charter of the association prescribes the mode in which by-laws may be adopted, the by-laws which the association seeks to make must of course be adopted in such mode in order to be valid, and the same proposition holds true with amendments. At the time of the attempted amendment of the by-laws in question, section 1200 of the Agricultural Code provided:

"Each association shall within thirty days after its incorporation, adopt for its government and management, a code of by-laws, not inconsistent with this chapter. A majority vote of the members or shares of stock issued and outstanding and entitled to vote, or the written assent of a majority of the members or of stockholders representing a majority of all the shares of stock issued and outstanding and entitled to vote, is necessary to adopt such by-laws and is effectual to repeal or amend any by-laws, or to adopt additional by-laws."

Plaintiff association contends that the language of said section 1200 of the Agricultural Code "is ambiguous or at least amphibolous." It asks: "Does this language mean that a non-profit co-operative marketing association, without capital stock or shares of stock but whose articles and by-laws provide for unequal voting in its various members, can only amend its by-laws by vote or written assent of a majority in number of its members, or does it mean that a majority

vote or written assent of its members entitled to vote—a majority of the voting power of its members—may amend its by-laws?'' We would answer this by saying that the object of section 1200 of the Agricultural Code is to provide a mode of amendment for both classes of associations, those with and those without shares of stock. In the case of plaintiff association, which has no shares of stock, we think the mode of amending the by-laws as authorized by section 1200 of the Agricultural Code is by vote or written assent of a majority in number of its members.

All references to representative voting in the articles and in the by-laws of plaintiff association are found in sections that deal with meetings, and nowhere in the articles or the by-laws do we find any reference to written assent. This latter phrase is found in Civil Code, section 301, and in section 1200 of the Agricultural Code. If section 301 of the Civil Code were to prevail here, the by-laws could be amended by the vote of shareholders authorized to exercise the majority of the voting power of the corporation or by the written assent of such shareholders, but since section 1200 of the Agricultural Code was specifically written to apply to associations of plaintiff's class, it, and not the general law, will be followed. It will be remembered, too, that the plaintiff association has no shares of stock.

According to section 1200 of the Agricultural Code, as we have said, the mode of amendment would be by vote or written assent of a majority in number, of members. In this case, since written assent was given by less than a majority in number of members, the attempted amendment must be held to be invalid.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied August 6, 1941, and appellant's petition for a hearing by the Supreme Court was denied August 28, 1941. Gibson, C. J., and Traynor, J., voted for a hearing.